**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONNELL D. SHREVE,

    Plaintiff,

                                  Case No. 05-72444

v.

                                  JUDGE PAUL D. BORMAN

AETNA LIFE INSURANCE COMPANY,    UNITED STATES DISTRICT COURT

    Defendant.

_____ /

**OPINION AND ORDER: (1) GRANTING PLAINTIFF DONNELL D. SHREVE'S
MOTION FOR ENTRY OF JUDGMENT (DOCK. NO. 22);
(2) DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES;
(3) GRANTING PLAINTIFF'S REQUEST FOR PRE-JUDGMENT INTEREST**

    Presently before the Court is Plaintiff Donnell D. Shreve's ("Plaintiff") Motion for Entry of Judgment. Having considered the parties' briefs, and for the reasons stated below, the Court GRANTS Plaintiff's Motion for Entry of Judgment. It is further ordered that Plaintiff's request for attorney's fees is DENIED and Plaintiff's request for pre-judgment interest is GRANTED.

**I.    FACTS**

    The facts are taken from the Court's Opinion and Order Denying Defendant's Motion for Entry of Judgment, *Shreve v. AETNA Life Ins. Co.*, 2006 WL 1976167 (E.D .Mich. July 12, 2006) (unpublished).

    Plaintiff,[1] a full-time employee of Sysco Corporation[2] ("Sysco"), was

---

    [1] Plaintiff is an individual and resident of Michigan. (Am. Compl. ¶ 1).

    [2] Plaintiff was employed as an Order Selector, which required him to drive a pallet jack through a warehouse to retrieve items from shelves and load inventory onto pallets for delivery.

1

eligible to participate in a long-term disability ("LTD") insurance plan (the "Policy") sponsored by Sysco and underwritten by Defendant.[3] (Pl.'s Resp. 3-4). Plaintiff was diagnosed with bilateral plantar fibromatosis[4] in February 2001 by his then-treating physician, Dr. Jerry Walden. (Pl.'s Resp. 4). Plaintiff's diagnosis was confirmed by Dr. Donald Wild ("Dr. Wild") through an MRI. (*Id*.). Plaintiff ceased working on February 18, 2001 because his condition worsened and began affecting both feet. (*Id*.). Dr. Wild noted that Plaintiff was capable of sedentary employment, but he indicated that the pain in Plaintiff's feet might last indefinitely and that it was unclear when Plaintiff would be allowed to pursue employment opportunities. (Def.'s Br. Ex. A, 6/26/01 Wild APS A 175). Plaintiff filed a claim with Defendant for LTD on June 20, 2001. (Pl.'s Resp. 4). His claim was approved and payments began on August 18, 2001. (*Id*.).

According to the terms of Defendant's LTD policy, a covered employee's claim "must give proof of the nature and extent of the loss. . . . [and the covered employee] must furnish such true and correct information as [Defendant] may reasonably request." (Def.'s Br. Ex. A, LTD Policy A 533). The policy also states that Defendant "will have the right and opportunity to examine and evaluate any person who is the basis of any claim at all reasonable times while the claim is pending or payable." (*Id*. at A 534).

The LTD policy addressed how Defendant's benefit entitlement decision-making process works.

> [Defendant] shall have discretionary authority to:
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> > construe any disputed or doubtful terms of this policy.
>
> [Defendant] shall be deemed to have properly exercised such authority unless [it] abuses its discretion by acting arbitrarily and capriciously.

(*Id*. at A 520). Defendant also has the "right and opportunity to examine and evaluate any person who is the basis of any claim at all reasonable times while the claim is pending or payable." (*Id*. at A 534).

A covered employee is eligible to receive benefits "[f]rom the date that you first become disabled and until Monthly Benefits are payable for 24 months."

---

(Pl.'s Resp. 4; Def.'s Br. 3).

[3] Defendant is a Connecticut corporation that does business in Michigan as a disability insurance provider. (Pl.'s Resp. 4; Am. Answer 2).

[4] Bilateral plantar fibromatosis is a condition of thickened fibrous tissue beneath the soles of the feet. (Pl.'s Resp. 4).

(Def.'s Br. Ex. A, LTD Policy A 523).  Defendant's LTD policy states:

> [Y]ou will be deemed to be disabled on any day if:
>
>> you are not able to perform the **material duties** of your **own occupation** solely because of: disease or injury; and
>> your work earnings are 80% or less of your adjusted **pre-disability earnings**.
>
> After the 24 months that any Monthly Benefit is payable, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of: disease; or injury.

(*Id.*) (emphasis in original).  The plan also describes when a covered employee's disability ends.
> Your disability ends on the first to occur of:
>> The date [Defendant] finds you are no longer disabled or the date you fail to furnish proof that you are disabled.
>> . . . .
>> The date you are able to perform the duties of a reasonable occupation for compensation or profit equal to 20% or more of the adjusted predisability earnings and you refuse to do so, if such date occurs after the first 24 months that any Monthly Benefit is payable.

(*Id.* at A 524).

In March 2003, Plaintiff's then-treating physician, Dr. Alcala-Saenz submitted an Attending Physician Statement ("APS") to Defendant.    (Def.'s Br. Ex. A, 3/22/03 Alcala-Saenz APS A 003).  The APS indicated that Plaintiff had visible palpable masses on the bottom of his feet that were tender to touch.  (*Id.*).  Dr. Alcala-Saenz indicated that Plaintiff's symptoms were pain on rest and pain when standing or walking.  (*Id.*).  Dr. Alcala-Saenz opined that the diagnosis was bilateral plantar fasciitis and noted that he was "house confined."  (*Id.*).  The APS further indicated that Plaintiff had severe limitation of functional capacity, which meant that he was incapable of minimal sedentary activity, and because of his constant pain and lack of sleep, Plaintiff had difficulty concentrating and remembering.  (*Id.*).  Plaintiff's prognosis was marked as "guarded."  (*Id.*).

At the conclusion of the 24-month disability benefits period, Defendant requested updated records and asked Plaintiff to submit a Claim Questionnaire ("Questionnaire").  (Def.'s Br. 5).  Plaintiff's treating physician, Dr. Angelica Francu ("Dr. Francu"), submitted an APS on April 8, 2004, indicating that Plaintiff had bilateral plantar fasciitis as a primary diagnosis, and Dupuytren's

contractures as a secondary diagnosis. (Def.'s Br. 6; Def.'s Br. Ex. A, 4/8/04 APS A 003). Dr. Francu also noted on the APS that there was no estimated date for Plaintiff to return to work,[5] and that his condition had regressed. (*Id.*). However, Dr. Francu indicated that Plaintiff could work six hours a day, five days a week, performing sedentary work.[6] (*Id.*). Further, Dr. Francu checked "no" to the question, "Is there a medical contraindication for patient to participate in Vocational Rehabilitation (job training) programs?" (*Id.*).

Plaintiff completed the Questionnaire on May 4, 2004. (*Id.*). On the Questionnaire, Plaintiff claimed that he was unable to walk and stand for extended periods of time, and also claimed that his feet were a constant source of pain. (Def.'s Br. Ex. A, Claim Questionnaire A 007). Plaintiff indicated on the Questionnaire that he is able to take care of personal care needs (i.e., grooming, dressing, etc.), and does laundry and cleaning on a regular basis. (*Id.*). Additionally, Plaintiff's Questionnaire answers indicated that he did not go for walks, though he goes fishing for fun. (*Id.*).

Defendant had its consulting medical director, Dr. William Hall ("Dr. Hall"), review Plaintiff's medical records and APS reports. After reviewing the medical records and APS reports, Dr. Hall concluded:

> I am not able to identify clinical references to activities prevented, delayed or interrupted by [Plaintiff] because of pain nor am I able to identify references to severe or recurring or intractable medication side effects experienced by him.
>
> [Plaintiff] has additional medical diagnoses of sleep apnea without complication and corrected by administration of C-PAP, obesity, and essential hypertension without complication and treated with administration of beta blocker and ACE-inhibitor medications. None of these diagnoses is attended by a medically limiting condition.
>
> In my opinion, [Plaintiff's] diagnosis of chronic and refractory left and right plantar faciitis complicated by Dupuytren's contractures at the same sites constitutes a medically limiting condition

---

[5] The Court assumes that "estimated date to return to work" means the estimated date Plaintiff could resume his previous job responsibilities. This assumption stems from Dr. Francu noting the limitation on hours per day and days per week that Plaintiff can work.

[6] Sedentary work activity was defined on the APS as "[m]oderate limitation of functional capacity. Exerting up to 10 pounds of force occasionally. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." (Def.'s Br. Ex. A, Claim Questionnaire A 007).

> preventing sustained standing or walking.
>
> I am not able to identify an objective or absolute impediment to
> [Plaintiff's] pursing sustained (full-time) activity including work at
> a sedentary level of exertion.

(Def.'s Br. Ex. A, 1/12/04 Dr. Hall Claim Review Summary A 225). To assess Plaintiff's vocational capabilities, Defendant referred Plaintiff's claim for a skills analysis/labor market study. (Def.'s Br. 7). The skills analysis/labor market study found fifty potential employment opportunities within a fifty mile radius of Plaintiff's residence. (*Id*. at 8; Labor Market Survey A 185-95).

After reviewing Dr. Hall's summary and the vocational information, Defendant determined that Plaintiff no longer met the definition of disabled, as stated in its LTD policy. (Def.'s Br. Ex. A, Defendant's Notes A 343-49). Defendant informed Plaintiff by letter, on September 8, 2004, that his benefits would be terminated because he no longer satisfied the Policy's definition of disability, (Def.'s Br. Ex. A, 9/8/04 Letter A 096-101), and followed up the letter with a phone call on September 9, 2004. (Def.'s Br. Ex. A, Defendant's Notes A 343).

On September 15, 2004, Plaintiff appealed Defendant's decision to terminate his benefits. (Def.'s Br. Ex. A, 9/15/04 Letter from Pl. A 046). On the same day, Dr. Francu's office informed Defendant by telephone that Dr. Francu's April 8, 2004 APS form was completed incorrectly. Dr. Francu also sent a letter to Defendant on September 17, 2004, stating that after reevaluation , including a recent medical examination by Dr. Francu, Plaintiff remained unable to work.[7] (Def.'s Br. Ex. A, 9/17/04 Letter from Dr. Francu A 044). Defendant also received Plaintiff's September 16, 2004 emergency room intake sheet, indicating that Plaintiff had elevated blood pressure but was not experiencing pain at the time. (Def.'s Br. Ex. A, Emergency Physician Record A 077-083). However, prior to being transferred to the hospital, a physician examining Plaintiff at Oakwood Healthcare Center noted that Plaintiff was unable to stand, walk, or sit for very long, due to pain in his feet. (Def.'s Br. Ex. A, Oakwood Healthcare Center Form A 069).

On November 4, 2004, Defendant informed Plaintiff in a letter that his appeal was rejected. (Def.'s Br. Ex. A, 11/4//04 Letter to Pl. A 091). Defendant's letter stated that although Dr. Francu informed it on September 17, 2004 that Plaintiff was still unable to sit, stand, or walk without pain, "[Dr. Francu] did not indicate what specifically happened between April 8, 2004 and

---

[7] Dr. Francu's letter also informed Defendant that Plaintiff was admitted into the Emergency Room for uncontrolled hypertension. It appears that Plaintiff first went to Oakwood Healthcare Center, (*See* A 069-071), before being transferred by ambulance to Oakwood Annapolis Hospital. (*See* A 077-083).

> September 17, 2004 to change her mind." (*Id*.). The letter also mentioned that "[t]here is no documented change in your condition that would prevent you from performing sedentary work." (*Id*.).
> 
> On December 20, 2004, Dr. Francu again wrote to Defendant. (Pl.'s Resp. 10). In that letter, Dr. Francu indicated that Plaintiff's diagnosis remained the same, Plaintiff had no ability to work, and she considered him permanently disabled. (Def.'s Br. Ex. A, 12/20/04 Francu Letter to Def. A 282). Plaintiff's benefits remained terminated, resulting in this lawsuit.

2006 WL 1976167, *1-*4.

On July 12, 2006, the Court denied Defendant's Motion for Entry of Judgment, permitted Plaintiff to re-file its out-of-time Motion for Summary Judgment, and permitted Defendant to file a Response. Plaintiff filed the instant Motion for Entry of Judgment on July 21, 2006. Defendant filed its response on August 16, 2006.

Plaintiff argues that because the Court's July 12, 2006 order found that Defendant acted arbitrarily and capriciously in terminating Plaintiff's disability benefits, the court should enter Judgment for Plaintiff. Plaintiff also asserts that the Court should award Plaintiff pre-judgment interest and attorney's fees.

Defendant responds that the Court must review Defendant's decision by applying the arbitrary and capacious standard and cannot overturn a decision with which the Court simply disagrees. Defendant argues that the arbitrary and capricious standard requires defendant to Defendant's decision which is reasonably based upon objective evidence in the record. Defendant avers that the Court failed to identify any evidence in the record that was overlooked or not considered by Defendant. Defendant also asserts that the objective evidence in the record supports its decision that Plaintiff was not totally disabled from any occupation. Defendant contends that Plaintiff is not automatically entitled to recover attorney's fees. Defendant further argues that: (1) Plaintiff failed to show that Defendant acted with bad faith; (2) Defendant's

6

ability to satisfy an award of attorney's fees should be given minimal weight; (3) awarding costs and attorney's fees would have little deterrent effect; (4) Plaintiff does not allege that he seeks to confer a common benefits; (5) the merits of the case do not warrants costs and attorney's fees; (6) Plaintiff has failed to attach invoices or specify what amount of fees are sought; and (7) prejudgment interest should be calculated on a monthly basis.

## II.   ANALYSIS

### A.   Standard of Review

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that an administrator's decision to deny benefits must be reviewed *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits.  When the plan administrator has discretionary authority to determine eligibility for benefits, "the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (internal citation omitted). However, the arbitrary and capricious standard of review is not "without some teeth." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

> "Deferential review is not no review," and "deference need not be abject."  [The court has] an obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously in making ERISA benefits determinations. This obligation inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.  Otherwise, courts would be rendered to nothing more than rubber stamps for any plan administrator's decision[,] as long as the plan was able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits.

*Id.*  (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

A plan does not need to use the words "discretionary authority" to constitute a clear grant

7

of discretion to the plan administrator. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998):

> [District courts should focus on the] "breadth of the administrators' power – their authority to determine eligibility for benefits or to construe the terms of the plan. While 'magic words' are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, [the Sixth Circuit] has consistently required that a plan contain a clear grant of discretion to the administrator to determine benefits or interpret the plan.

*Id.* (internal citations omitted).

A plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The arbitrary and capricious standard is the least demanding form of judicial review of an administrative action. *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2005); *see also Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).

**B.    Discussion**

   1.    Motion for Entry of Judgment

In denying Defendant's Motion for Entry of Judgment, the Court previously held that:

> Here, Plaintiff's treating physician originally stated that Plaintiff could work six hours a day, five days a week. After Defendant terminated the benefits, treating physician again examined Plaintiff and submitted letters to Defendant notifying them that, after reevaluating Plaintiff, he was not able to work. Dr. Francu's subsequent letter notifying Defendant of her reevaluation stated that her earlier opinion was a mistake. This, while Dr. Hall agreed with Dr. Francu's original medical opinion in her April 2004 APS, that initial opinion was changed after a subsequent visit. Dr. Francu did not submit office examination notes or other medical records to support her September 16, 2004 medical opinion. Neither Dr. Hall, nor any other doctor hired by Defendant ever conducted an examination of Plaintiff.
>
> It is unclear whether Dr. Hall is an independent medical reviewer or somehow

>  affiliated with Defendant. It is clear that Defendant did not conduct an independent medical evaluation after Dr. Francu informed it of her mistake/change of opinion; Defendant had reserved the right to do so. Although Dr. Francu never submitted office examination notes or other medical records to document the change in her medical opinion of Plaintiff, the fact remains that she performed another medical evaluation on Plaintiff on September 16, 2004. It was her opinion, as of that date, that Plaintiff had no ability to work, walk, sit or stand. Dr. Francu believed that Plaintiff's plantar fasciitis prognosis was poor and that he continued to regress. Regardless of whether Dr. Francu submitted notes or records to document her medical evaluation, Defendant was aware of the reevaluation and of Dr. Francu's medical opinion of Plaintiff, and that her change of opinion was based on the new evaluation. If Defendant believed that Dr. Francu's medical opinion was unsupported because she did not specifically state what occurred to change her mind, it should have conducted its own independent medical evaluation, rather than ignoring her medical opinion and subsequently denying Plaintiff's appeal. This circuit has previously held that "[p]lan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the *opinions* of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (emphasis added). Here, instead of relying on Dr. Francu's most recent medical opinion, Defendant relied on its consulting medical director's opinion,[8] even in light of both Dr. Francu's statement that her April 2004 APS was made in error, and, Dr. Francu's medical opinion based on her September 16, 2004 evaluation of Plaintiff.
>
>  Accordingly, after considering Dr. Francu's September 16, 2004 medical opinion of Plaintiff, Defendant's decision not to perform an independent medical evaluation, and Defendant's conflict of interest, the Court concludes that Defendant acted arbitrary and capriciously in terminating Plaintiff's disability benefits.

2006 WL 1976167, *7-*8.

Consistent with this Court's prior Order, the Court finds that Defendant acted arbitrary and capriciously in terminating Plaintiff's disability benefits. Accordingly, the Court grants Plaintiff's instant Motion for Entry of Judgment.

---

[8] The Court notes that Dr. Hall suggested in his summary that Defendant request Plaintiff's medical records and an APS on April 1, 2005. Defendant rejected Plaintiff's appeal before April 1, 2005, and never requested the additional information.

### 2. Attorney's Fees

Plaintiff argues that the Court in its discretion may allowed reasonable attorney's fees and costs in an ERISA action. Plaintiff asserts that there are five factors that the Court must examine when considering an award of attorney's fees.

"A district court must consider the following factors in deciding whether to award attorney fees[:] (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions." *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 936 (6th Cir. 2000). Therefore, the Court will make findings on each factor.

#### i. The Degree of the Opposing Party's Culpability or Bad Faith

Plaintiff argues that there is a high degree of culpability regarding the refusal to consider Dr. Francu's opinion. Defendant responds that Plaintiff has failed to show that it acted with any culpability or bad faith.

As stated above, Defendant acted arbitrary and capriciously. However, the Court does not find that Defendant acted with a high degree of culpability or in bad faith. Defendant explained that it did not give any credence to Dr. Francu's September 16, 2004 medical opinion because it was inconsistent with the physician's prior opinion and was not provided with documented evidence. While the decision to ignore Dr. Francu's September 16, 2004 medical

opinion, and the failure to conduct its own independent examination, was arbitrary and capricious, it cannot be said to be in bad faith. Accordingly, the factor weighs in favor of Defendant.

        ii.        The Opposing Party's Ability to Satisfy an Award of Attorney's Fees

It is uncontested that Defendant has the ability to satisfy and award of attorney's fees. As a result, this factor weighs in favor of Plaintiff.

        iii.        The Deterrent Effect of an Award on Other Persons Under Similar Circumstances

Defendant argues that awarding attorney's fees would not have a deterrent effect. Indeed, this Court agrees. The Court does not find that Defendant acted in bad faith or with a high degree of culpability. Accordingly, the Court finds this factors weighs in favor of Defendant.

        iv.        Whether the Party Requesting Fees Sought to Confer a Common Benefit on all Participants and Beneficiaries of an ERISA Plan or Resolve Significant Legal Questions Regarding ERISA

Defendant argues that this claim for benefits will have no impact on any other plan participant and does not involve any novel or significant legal issues. Plaintiff contends that an award of attorney's fees would benefit similarly-situated employees. The Court finds that this factor weighs in favor of Defendant. This incident is fact specific, and the Court's ruling is based on those specific facts. Further, the case does not involve an important legal issue. Accordingly, the Court is not convinced that its holding will confer a common benefit on all participants or resolve any significant legal questions.

      v.  The Relative Merits of the Parties' Positions

The Court finds that both parties' positions had merit.  This factor favors Defendant.  Accordingly, the Court denies Plaintiff's motion for attorney's fees.

    3.  Pre-judgment Interest

The Sixth Circuit has held that even though "ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principle." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998).  "An award of prejudgment interest serves to compensate the beneficiary for the lost interest value of money wrongly withheld from him or her." *Hoover v. Provident Life and Acc. Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002) (internal citations omitted).  This Court finds that a pre-judgment interest award is appropriate in this case.  Plaintiff has been deprived of the use of benefits necessary to support himself, while, at the same time, Defendant has had access to the money.

"Awards of prejudgment interest pursuant to § 1132(a)(1)(B), however, are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Ford*, 154 F.3d at 618.  As federal law does not prescribe a rate for prejudgment interest, the matter is one of trial court discretion.  The Sixth Circuit has approved the use of the 52-week Treasury Bill rate prescribed in 28 U.S.C. § 1961 for post-judgment interest ("blended rate of interest") as a guide for the calculation of prejudgment interest. *Id.* at 619.  The blended rate of interest averages the 52-week United States Treasury Bill interest rate over the relevant time period. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002).  The Court must follow the Sixth Circuit and adopts the blended rate of interest in model this case. *See Ford*, 154

F.3d at 618.

To assist the Court in framing of an appropriate judgment, Defendant is directed to file a document within twenty-one days, setting forth for each month between September 2004 to the present, the amount of benefit payable to Plaintiff. The document must contain, for each monthly payment, a calculation of pre-judgment interest, using the "stream-of-benefits model" endorsed by the Sixth Circuit in *Caffey*, at the blended rate of interest.. "The stream-of-benefits model calculate[s] the interest due on each monthly payment of disability benefits beginning with the date that each payment was due." *Id.*

### III.   CONCLUSION

For the reasons stated, the Court:

GRANTS Plaintiff's Motion for Entry of Judgment;

DENIES Plaintiff's request for attorney's fees; and

GRANTS Plaintiff's request for pre-judgment interest.

**SO ORDERED.**

                              s/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT JUDGE

Dated: January 24, 2007

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on January 24, 2007.

                              s/Denise Goodine
                              Case Manager